UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PHOSPHORUS FREE WATER
SOLUTIONS, LLC,

                Plaintiff,

v.                                         Case No:

THOMAS WAITE, an individual,
and FERRATE SOLUTIONS, INC.,
a Florida corporation

                Defendants.

_____

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff Phosphorus Free Water Solutions, LLC ("Phosphorus Free" or "Plaintiff"), by and through its undersigned counsel, hereby sues Thomas Waite ("Waite") and Ferrate Solutions, Inc. ("Ferrate Solutions"; collectively "Defendants"), for damages and injunctive relief and alleges as follows:

## <u>JURISDICTION AND VENUE</u>

1.    This Court has original jurisdiction over this action pursuant to 18 U.S.C. § 1836(c), 28 U.S.C. § 1331, for a claim arising under the Defend Trade Secrets Act of 2016.

2.     This Court has supplemental jurisdiction over Plaintiff's related state law claims that form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court pursuant to M.D. Fla. Local Rule 1.04, because Ferrate Solutions is a Florida corporation with its principal place of business in Brevard County, Florida.

## THE PARTIES

4.     Plaintiff Phosphorus Free is a Delaware limited liability company with its principal place of business in Polk County, Florida.

5.     Defendant Waite is an individual who, upon information and belief, resides in Brevard County, Florida.

6.     Defendant Ferrate Solutions is a Florida corporation with its principal place of business in Brevard County, Florida.

## GENERAL ALLEGATIONS

7.     Phosphorus Free is engaged in the business of providing water and wastewater treatment solutions to process and remove excess nutrient pollutants such as phosphorus.

8.     Phosphorus Free brings claims against Defendants for misappropriation of trade secrets under state and federal law, tortious interference with business relations, breach of contract, and injunctive relief.

2

## PHOSPHORUS FREE'S LICENSING AGREEMENT WITH FERRATE TREATMENT TECHNOLOGIES, LLC, AND <u>EFFORTS TO MAINTAIN TRADE SECRETS</u>

9.      On November 2, 2016, Phosphorus Free executed a licensing agreement (the "License") with Ferrate Treatment Technologies, LLC ("FTT").  A true and correct copy of the License is attached as **Exhibit A**.

10.     FTT developed proprietary methods, materials, and processes for ferrate manufacture, use, and treatment to process and remove phosphorus and other contaminants from bodies of water.  Ferrate is a highly reactive, iron-based chemical compound that provides an environmentally friendly solution to water treatment.

11.     FTT's innovation was significant for its ability to manufacture ferrate at commercially viable scale instead of in small amounts in a laboratory.

12.     Pursuant to the License, FTT granted Phosphorus Free an exclusive, twenty-year license to FTT's technology in North America and Canada.  The licensed property included FTT's proprietary software, patents, know-how, formulas, and any other intellectual property ("IP") related to collecting, filtering, and removing phosphorus from water.

13.     FTT acquired its IP through considerable effort, knowledge, experimentation, time, and expense to discover innovations in, and overcome the inherent obstacles related to, ferrate-based water treatment systems.

14.    Among FTT's IP was the "Ferrator," a ferrate reactor originally conceived by FTT in 2009, used in its method of on-site production of commercially viable quantities of Ferrate for water treatment, and developed for municipal, surface water, and industrial applications.  FTT's largest capacity Ferrator is the Fe300 model.

15.    Distinct from the Ferrator as a device, FTT originally applied for in 2002, and was granted in 2004, a patent for novel methods of synthesizing ferrate. In total, FTT has held four patents for methods of synthesizing ferrate, and currently holds two patents, U.S. Patent No. 8715510, covering methods and devices for measuring an additive, such as ferrate, in a treatment system, and U.S. Patent No. 6974562, covering methods of synthesizing an oxidant and applicants thereof, such as devices and systems for synthesizing ferrate at a site proximal to the site of use.

16.    FTT and Phosphorus Free only allowed employees to work with the Ferrator on a "need-to-know" basis.

17.    FTT and Phosphorus Free customarily had employees sign non-disclosure agreements, and FTT worked under a non-disclosure agreement with a key vendor who built the Ferrator, Gas Turbine Efficiency ("GTE").

18.    Neither FTT nor Phosphorus Free has published their methods of synthesizing ferrate in journals or elsewhere.

19.    FTT and Phosphorus Free sealed physical equipment structures with closures and protected source codes for operational software with passcodes.

### WAITE'S EMPLOYMENT WITH FTT AND CREATION OF FERRATE SOLUTIONS

20.    In March 2011, FTT employed Waite, and they executed an employment agreement (the "Employment Agreement").  A true and correct copy of the Employment Agreement is attached as **Exhibit B**.

21.    The Employment Agreement contained several provisions regarding trade secrets, confidentiality, and other materials.  Pursuant to Articles 3, 7, and 9, Waite agreed to keep confidential in perpetuity proprietary information and trade secrets disclosed to Waite during his employment.  This included "any information, knowledge, data, or property" relating to FTT's business, such as ferrate production techniques and product characteristics.

22.    Pursuant to Article 4 of the Employment Agreement, Waite also agreed not to retain, without prior written authorization, any documents related to FTT's business and "all property associated therewith (such as but not confined to methods, knowhow, and stoichiometry)."

23.    Article 6 also provided that "all trade secrets, inventions, and technical or business innovations developed or conceived" by Waite solely or jointly with others during his employment, that concerned the "activities, work, or investigations" of FTT, "shall be [FTT]'s property."

24.     Waite's employment relationship with FTT ended in September 2014, before FTT and Phosphorus Free entered into the License.

25.     In 2021, FTT assigned clauses 3, 4, 6, 7, and 9 of the Employment Agreement to Phosphorus Free.

26.     On March 26, 2018, Waite incorporated Ferrate Solutions.

27.     Through its website, Ferrate Solutions advertised ferrate-based water treatment systems to prospective clients worldwide.  Ferrate Solutions represents that it has designed "proprietary blends of inexpensive, commercially available feedstock chemicals," allowing it to continuously generate ferrate nearby its point of use.  Ferrate Solutions claims to employ an on-site, site-specific modular treatment system that is "fully process controlled and can be remotely controlled from central locations," and can interface into any existing water treatment system.

28.     The Ferrate Solutions website represents that "[f]or the past eight years Dr. Waite has worked on treating all types of water and wastewater using these unique [ferrate] solutions," which necessarily includes his employment with FTT.

### WAITE'S ATTEMPTS TO SECURE, AND SUBSEQUENT MISAPPROPRIATION OF, FTT'S IP

29.     On November 3, 2018, Waite emailed Luke Daly ("Daly"), the former CEO and founder of FTT.  Waite requested a license for FTT's patents, or alternatively, "a letter of intent to 'simply' not litigate any patent violations that I or mine might generate during our start-up.  This would by-pass any licensing issues

6

you might have with creditors ??"  Waite hoped to provide the license or letter to possible investors in projects by Ferrate Solutions.

30.    Waite attached to the email a proposed licensing agreement, which stated:

> You are hereby granted the non-exclusive, irrevocable, world-wide right, with the right to grant sub-licenses, to use all active patents referenced above and related to Ferrate synthesis and applications from [FTT], in any manner, including but not limited to the development, manufacture, and sale of FTT "Ferrators."  This license extends to you personally and any company under your control, beginning today, November 3, 2018 and remaining in effect until the expiration of such patents in 2022.

Daly replied that such a broad license would make Waite a direct competitor to every FTT licensee or sales channel partner worldwide.

31.    In January 2019, upon information and belief, Waite contacted John Flaugher ("Flaugher"), FTT's top sales executive, in an attempt to lure him away from FTT.  Flaugher rebuffed this offer.

32.    On that same day, upon information and belief, Waite also contacted Michael Thomas ("Thomas"), President of the Industrial Business Unit at GTE.  Waite told Thomas that he believed that FTT would fail and requested a meeting with GTE.

33.    Later that month, upon information and belief, Waite had a meeting at GTE with Thomas and Bob Knott, GTE's Senior Vice President.  Waite wished to present his design and ask for an estimated price to build his own Ferrator.  Waite

represented that he did not want to infringe upon any of FTT's IP but showed GTE multiple CAD drawings and a bill of materials of an FTT reactor design from FTT. When asked where the documents came from, Waite stated that he did not know.

34.   On February 14, 2019, Daly sent a letter to Waite, asking Waite to immediately take down the Ferrate Solutions website, including because of statements that Waite "designed and built Ferrate treatment systems" as "a member of the last start-up," and to cease-and-desist any impermissible activity.   Daly reminded Waite of his ongoing contractual obligations to FTT.   On February 23, 2019, Waite responded to Daly through email, stating that he "intended to continue with the commercialization of ferrate."

35.   In or around January 2020, Ferrate Solutions was approached by a dredging company, and in or around July 2020, executed a contract with the dredging company for the Grand Canal Muck Removal Project in Brevard County, Florida ("Grand Canal Project").   Upon information and belief, Ferrate Solutions represented that it would treat the water with its proprietary trade secret process. Defendants included with documents a material safety data sheet ("MSDS") with FTT's letterhead.

36.   In anticipation of the Grand Canal Project, on July 7, 2020, Ferrate Solutions executed a sale and purchase agreement (the "Purchase Agreement") to acquire a Ferrator Fe300 from a former licensee of FTT, WesPac Energy ("WesPac"),

a California company.  Ferrate Solutions did not obtain a license from FTT for that Ferrator.

37.     WesPac owned the Ferrator Fe300 machine outright, but the license to use the operational software and use it to treat water contaminates had expired.

38.     The Ferrator Fe300 was not operational and had no manual, and, upon information and belief, Ferrate Solutions hired former FTT employees to refurbish the device, including to facilitate operating information and start-up and shut-down sequences.  In or around September 2020, Ferrate Solutions began operating the Ferrator Fe300 as part of a ferrate-based water treatment system as a subcontractor for the Grand Canal Project.

39.     In or around March 2021, Ferrate Solutions submitted a bid for a project with the South Florida Water Management District (the "South Florida Project"), to remove phosphorus from the district's water basin.  Upon information and belief, Ferrate Solutions, in its application, again represented that it would treat the water with its ferrate-based, proprietary trade secret process.  Phosphorus Free also submitted a bid for the South Florida Project, which originally was awarded to Ferrate Solutions.  Phosphorus Free challenged the award to Ferrate Solutions and, during subsequent administrative proceedings, Phosphorus Free learned that Defendants were in possession of the Ferrator Fe300.

40.     As an exclusive licensee in possession of FTT's trade secrets and as the assignee of Waite's Employment Agreement, Phosphorus Free has standing to bring these claims.

41.     The Grand Canal is at least one example of how the Defendants distort the market by using Phosphorus Free's IP to take away business opportunities and offer to complete projects more cheaply; otherwise, Phosphorus Free would have been the only bidder.

42.     Phosphorus Free invested nearly $3 million in helping to develop FTT's IP and has a significant interest in maintaining its value.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS,
## DEFEND TRADE SECRETS ACT OF 2016 (DTSA)

43.     Plaintiff re-alleges all allegations in paragraphs 1-42 above and further alleges:

44.     Defendants misappropriated the Trade Secrets that were used or intended for use in interstate commerce, as Phosphorus Free's license covered North America, and Defendants solicited worldwide business through their website and contracted with a California corporation in obtaining the Ferrator Fe300 at issue.

45.     FTT owns and has an interest in certain trade secrets and know-how relating to the production, use, and delivery of ferrate and ferrate feedstocks, and further including dry and liquid ferrate feedstocks, stoichiometry, synthesis

formulae, and methods; electrochemical, catalytic, and chemical reaction accelerators; reaction kinetics and thermal controls; ferrate production storage, handling, settling, filtering and dosing techniques; dosing requirements at various flow, pressure, temperature, and pH ranges; Ferrator and related sensor materials, plans, specifications, control programs, infrastructure, and site requirements knowledge; and specific applications knowledge and treatment process expertise for phosphorus treatment and removal and remote monitoring and diagnostic techniques (the "Trade Secrets").

46. The Trade Secrets derive value from, among other things, the ability to solve long-standing issues with the commercialization of green ferrate technology, such as storage, transportation, and synthesis of inherently-unstable ferrate, by facilitating the on-site synthesis and integration of ferrate into existing water treatment systems.

47. FTT independently and lawfully conceived of and utilized the Trade Secrets prior to retaining Waite in 2011, or while Waite was employed by FTT.

48. FTT maintained the secrecy of its Trade Secrets as described above, including by packaging its IP in contractual agreements foreclosing the disclosure of its Trade Secrets and associated documents; by requiring its employees, including Waite, to execute agreements containing the same; by limiting employee access to

the Ferrator on a "need-to-know" basis; and by sealing physical equipment structures with closures and protecting source codes for operational software with passcodes.

49.     Waite, in his capacity at FTT, was exposed to the Trade Secrets. Pursuant to Articles 3, 4, 7, and 9 of the Employment Agreement, Waite had a duty to maintain the secrecy of the Trade Secrets.

50.     Following the conclusion of his employment with FTT, Waite did not obtain the consent or permission of FTT or Phosphorus Free to use the Trade Secrets, and continues to use the Trade Secrets without authorization or consent.

51.     Waite misappropriated the Trade Secrets by, among other things, openly advertising them on the Ferrate Solutions website, presenting FTT's confidential documents to GTE and others, representing the Trade Secrets as his own proprietary trade secret process in bids for water treatment projects, acquiring a Ferrator Fe300 without FTT's knowledge or consent, hiring former FTT employees to refurbish the Ferrator Fe300, and using the refurbished Ferrator Fe300 as part of the Grand Canal Project.

52.     Phosphorus Free initiated this action to enforce its rights under the Licensing Agreement upon obtaining concrete knowledge, during the recent administrative proceeding, that Defendants had misappropriated the Trade Secrets.

53.    The DTSA permits Phosphorus Free to recover damages for actual loss caused by Defendants' misappropriation, and for the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

54.    The DTSA permits Phosphorus Free to seek injunctive relief against Defendants to prevent any actual or threatened misappropriation of the Trade Secrets, including ordering Defendants to take affirmative acts to protect the Trade Secrets.

55.    Phosphorus Free, as the exclusive licensee for FTT's IP in North America, has and continues to suffer damages as a result of Defendants' misappropriation, including but not limited to the devaluation of FTT's IP and loss of sales, loss of cash flow, loss of goodwill, and harm to its relationship with vendors and customers.

56.    Pursuant to the DTSA, Defendants' willful and malicious misappropriation permits Phosphorus Free to recover reasonable attorney's fees, as well as exemplary damages up to two times the amount of damages, as evinced by Defendants' open use of the Trade Secrets in direct contravention of the Employment Agreement.

WHEREFORE, Phosphorus Free Water Solutions, LLC, demands judgment against Thomas Waite and Ferrate Solutions, Inc., for damages and injunctive relief,

together with pre-judgment interest, taxable costs, attorneys' fees, exemplary damages, and such other relief as the Court deems just and proper.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS,
## <u>FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA)</u>

57.     Plaintiff re-alleges all allegations in paragraphs 1-42 above and further alleges:

58.     FTT maintained the secrecy of its Trade Secrets as described above, including by packaging its IP in contractual agreements foreclosing the disclosure of its Trade Secrets and associated documents; by requiring its employees, including Waite, to execute agreements containing the same; by limiting employee access to the Ferrator on a "need-to-know" basis; and by sealing physical equipment structures with closures and protecting source codes for operational software with passcodes.

59.     The Trade Secrets derive value from, among other things, the ability to solve long-standing issues with the commercialization of green ferrate technology, such as storage, transportation, and synthesis of inherently-unstable ferrate, by facilitating the on-site synthesis and integration of ferrate into existing water treatment systems.

60.     FTT independently and lawfully conceived of and utilized the Trade Secrets prior to retaining Waite in 2011, or while Waite was employed by FTT.

61.     Waite, in his capacity at FTT, was exposed to the Trade Secrets. Pursuant to Articles 3, 4, 7, and 9 of the Employment Agreement, Waite had a duty to maintain the secrecy of the Trade Secrets.

62.     Following the conclusion of his employment with FTT, Waite did not obtain the consent or permission of FTT or Phosphorus Free to use the Trade Secrets, and continues to use the Trade Secrets without authorization or consent.

63.     Defendants misappropriated the Trade Secrets by, among other things, openly advertising them on the Ferrate Solutions website, presenting FTT's confidential documents to GTE and others, representing the Trade Secrets as their own proprietary trade secret process in bids for water treatment projects, acquiring a Ferrator Fe300 without FTT's knowledge or consent, hiring former FTT employees to refurbish the Ferrator Fe300, and using the refurbished Ferrator Fe300 as part of the Grand Canal Project.

64.     Phosphorus Free initiated this action to enforce its rights under the Licensing Agreement upon obtaining concrete knowledge, during the recent administrative proceeding, that Defendants had misappropriated the Trade Secrets.

65.     The FUTSA permits Phosphorus Free to recover damages, including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

66.    The FUTSA permits Phosphorus Free to seek injunctive relief for the actual or threatened misappropriation of the Trade Secrets by Defendants, including ordering Defendants to take affirmative acts to protect the Trade Secrets.

67.    The FUTSA permits Phosphorus Free to recover reasonable attorney's fees for Defendants' willful and malicious misappropriation, as evinced by Defendants' open use of the Trade Secrets in direct contravention of the Employment Agreement.

68.    Phosphorus Free, as the exclusive licensee for FTT's IP in North America, has and continues to suffer damages as a result of Defendants' misappropriation, including but not limited to the devaluation of FTT's IP and loss of sales, loss of cash flow, loss of goodwill, and harm to its relationship with vendors and customers.

WHEREFORE, Phosphorus Free Water Solutions, LLC, demands judgment against Thomas Waite and Ferrate Solutions, Inc., for damages and injunctive relief, together with pre-judgment interest, taxable costs, attorneys' fees, exemplary damages and such other relief as the Court deems just and proper.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

69.    Plaintiff re-alleges all allegations in paragraphs 1-42 above and further alleges:

70.     Phosphorus Free has business relationships and contracts with its customers, employees, suppliers, vendors, and others.

71.     As a direct competitor with Phosphorus Free in the water treatment industry and former employee of FTT, Defendants are aware of these business relationships and contracts.

72.     Defendants have intentionally interfered with such relationships by soliciting customers or vendors, placing bids on water treatment projects in competition with Phosphorus Free, and by hiring and soliciting to hire FTT's existing or former employees and vendors.

73.     Such interference and procurements are unjustified because Defendants are engaging in the interference by relying on information that Waite acquired in his role as an employee of FTT, including confidential and trade secret information licensed exclusively to Phosphorus Free.

74.     Waite's intentional and unjustified interference with Phosphorus Free's business and contractual relationships has resulted in damages to Phosphorus Free including but not limited to the devaluation of FTT's IP and loss of sales, loss of cash flow, loss of goodwill, and harm to its relationship with vendors and customers.

WHEREFORE, Phosphorus Free Water Solutions, LLC, demands judgment against Thomas Waite and Ferrate Solutions, Inc., for damages and injunctive relief,

together with pre-judgment interest, taxable costs, attorneys' fees and such other relief as the Court deems just and proper.

## COUNT IV:
## BREACH OF CONTRACT

75.     Plaintiff re-alleges all allegations in paragraphs 1-42 above and further alleges:

76.     Pursuant to Articles 3, 4, 7, and 9 of the Employment Agreement, Waite has an ongoing duty to maintain the secrecy of the Trade Secrets, and not to retain, without prior written authorization, any documents related to FTT's business.

77.     Waite, in violation of the Employment Agreement, failed to maintain the secrecy of the Trade Secrets by, among other things, openly advertising them on the Ferrate Solutions website, presenting FTT's confidential documents to GTE and others, representing the Trade Secrets as their own proprietary trade secret process in bids for water treatment projects, acquiring a Ferrator Fe300 and hiring former FTT employees to refurbish the Ferrator Fe300, and using the refurbished Ferrator Fe300 as part of the Grand Canal Project.

78.     Waite, in violation of the Employment Agreement, retained, without prior written authorization, FTT's confidential documents that he presented to GTE and others.

79.     Phosphorus Free, as the exclusive licensee for FTT's IP in North America, has and continues to suffer damages as a result of Waite's breach of the

Employment Agreement, including but not limited to the devaluation of FTT's IP and loss of sales, loss of cash flow, loss of goodwill, and harm to its relationship with vendors and customers.

WHEREFORE, Phosphorus Free Water Solutions, LLC, demands judgment against Thomas Waite for damages and injunctive relief, together with pre-judgment interest, taxable costs, attorneys' fees, exemplary damages and such other relief as the Court deems just and proper.

## COUNT V
## INJUNCTIVE RELIEF

80.     Plaintiff re-alleges all allegations in paragraphs 1-42 above and further alleges:

81.     Phosphorus Free has a clear legal right to have Waite abide by the Employment Agreement.

82.     Phosphorus Free has a clear legal right for the Defendants not to misappropriate the Trade Secrets.

83.     Phosphorus Free has a clear legal right for the Defendants not to engage in tortious interference with its business relationships and contracts.

84.     The violations of the Employment Agreement, misappropriation of trade secrets, and tortious interference are causing Phosphorus Free to suffer irreparable harm for which there is no adequate remedy at law since damages cannot prevent the ongoing loss that arises from the unauthorized use or disclosure of

another party's IP that derives value from its secrecy, and where a company's goodwill and relationships with customers, suppliers, and vendors are damaged by ongoing misappropriation and tortious interference.

85.    Injunctive relief will serve the public interest because it is in the public interest to promote the proliferation of beneficial technology by protecting parties' IP, and to have contracts enforced and to prevent tortious interference with business relationships.

WHEREFORE, the Plaintiff, Phosphorus Free Water Solutions, LLC, demands a trial by jury of all issues to be tried herein as well as judgment in its favor against Defendants Thomas Waite and Ferrate Solutions, Inc., and requests the Court to grant the following relief:

(i)     Damages against Defendants for misappropriation of trade secrets licensed exclusively to Phosphorus Free;

(ii)    Damages against Defendants for tortious interference with Phosphorus Free's business relationships and contracts;

(iii)   Damages against Waite for breach of contract;

(iv)    An order of injunctive relief against Defendants and all parties in interest with them, in privity with them, represented by them, or subject to their control enjoining all further misappropriation of Phosphorus Free's IP and acts of tortious interference;

(v)     Reasonable attorney's fees and costs;

(vi)    Exemplary damages; and

(vii)   Such other and further relief that the Court deems just and

equitable.

Dated this 19th day of November, 2021.


**BISHOP & MILLS**

By: /s/ *Thomas E. Bishop*
    Thomas E. Bishop

Florida Bar Number 956236
Katharine Noelle Roth
Florida Bar Number 106692
Alexander Thomas Briggs
Florida Bar Number 117490
One Independent Drive, Suite 1700
Jacksonville, Florida 32202
(904) 598-0034/(904) 598-0395 (fax)
*tbishop@bishopmills.com*
*kroth@bishopmills.com*
*service@bishopmills.com*

## VERIFICATION

My name is Timothy McIntee and, pursuant to 28 U.S.C. § 1746, I hereby affirm that I am over 18 years of age and am competent to make the following Verification:

(1)   I am currently employed as the President of Phosphorus Free Water Solutions, LLC;

(2)   I have read the foregoing Verified Complaint for Injunctive Relief and Damages and hereby verify that the allegations of fact contained therein are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of November 2021.

Timothy McIntee