# Exhibit B

**Ferrate Treatment**

6432 PINECASTLE BLVD. SUITE C, ORLANDO, FL 32809   T: (407) 857-5721   F: (407) 826-0166   E:

## CONDITIONS OF EMPLOYMENT AGREEMENT

The purpose of this agreement is to define the at will conditions of employment that a new employee accepts when joining Ferrate Treatment Technologies, LLC or any of its direct or indirect subsidiaries (collectively, the "Company"). The employee's signature indicates that the employee has had an opportunity to read this agreement, has an understanding of this agreement, and agrees to abide by all of the obligations, duties and covenants of this agreement.

1) I will abide by all of the policies and regulations of the Company and my participation in the various employee benefit plans, if any, of the Company will be in accordance with the standard terms and conditions of those plans as currently exist or as subsequently amended by the Company in its sole discretion.

2) I will devote my best efforts to the service of the Company; I will perform to the best of my ability such duties as may be assigned to me; and I will not engage in other employment and/or activities that conflict with or impair my obligations as an employee of the Company.

3) I understand and acknowledge that the Company will disclose information to me in the course of my employment, including confidential business information and trade secrets of the Company. I will not, during or at any time after the period of my employment by the Company, use for myself or others or divulge or convey to others, directly or indirectly, any information, knowledge, data, or property relating to the Company's business, including but not limited to, production costs, identities of past, current and prospective customers, selling prices, ferrate production techniques and product characteristics, developed, learned, or in any way obtained by me during the course of my employment by the Company other than published material properly in the public domain, unless authorized by the Company in writing or by established Company procedures. This includes, but is not limited to, information, knowledge, data, or property concerning any process, apparatus, or product manufactured, used, developed, investigated, or considered by the Company.

4) I understand and acknowledge that all memoranda, notes, records, papers, or other documents (and all copies thereof) relating to the Company's business and all property associated therewith (such as but not confined to methods, knowhow, and stoichiometry) in any way authored or obtained by me while employed by the Company shall be the Company's property, and will not be removed from the Company's premises without written authorization from the appropriate supervisor and shall be delivered by me to the Company on termination of employment or at any time on the Company's request together with my written certification of compliance. This includes but is not limited to such documents, computers, cell phones, and property containing or concerning any process, apparatus, or product manufactured, used, developed, investigated or considered by the Company. I will surrender all manuals, handbooks, employee identification cards and passes, credit cards, computers, cell phones, Company documents and other similar items of Company property to the Company promptly on my termination of employment.

5) I covenant and agree that (a) during the period of my employment hereunder and during any later agreed upon severance period offered at the sole discretion of the Company, or (b) during the period of my employment hereunder and for a period of two years after termination of employment

hereunder, whichever is longer (the "Non-Compete Period"), I shall not in any Competitive Territory, engage, directly or indirectly, whether as principal or as agent, officer, director, employee, consultant, shareholder, or otherwise, alone or in association with any other person, corporation, or other entity, in any Competing Business. For purposes of this agreement, (i) the term "Competing Business" shall mean any person, corporation, or other entity that develops, produces, markets, services, sells or attempts to sell any products or services that are the same as or similar to the products and services developed, marketed and/or sold by the Company at any time, and from time to time during the last two years prior to the termination of my employment hereunder; and, (ii) the term "Competitive Territory" shall mean the states of the United States of America and any other nation in which the Company sells and/or markets, either through itself or through a subsidiary, affiliate, joint venture partner, or any agent or representative, the products and services of the Company, during the last two (2) years prior to the termination of my employment hereunder.

6) Notwithstanding anything herein to the contrary, to the extent that my employment with the Company requires me at any time during my last two (2) years of employment with the Company to market or sell products to, or to service, customers of the Company or identify or be privy to information regarding potential customers of the Company, I also agree that during the Non-Compete Period, I shall not, on behalf of a Competing Business, directly or indirectly, solicit, service, or market, sell or attempt to sell products to, those same customers and potential customers of the Company. I also agree that during my employment with the Company and for two (2) years following termination of my employment with the Company, I will not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever, or hire any employee of the Company on my behalf or on behalf of any other company, entity or employer. All trade secrets, inventions and technical or business innovations developed or conceived by me solely or jointly with others during the period of my employment (i) that are along the lines of the activities, operations, work, or investigations of the Company or its affiliates to which my employment relates or as to which I may receive information due to my employment or (ii) that result from or are suggested by any work which I may do for the Company shall be the Company's property.

7) With regard to all trade secrets, inventions or discoveries within Paragraph 6 above, during the period of my employment and thereafter:

   a) I understand that a trade secret is any confidential information, machine, pattern, or process, which may give its user an advantage over his or her business competitors. Trade secrets are protected indefinitely and there is no time limit on Trade secrets. They are the sole property of the employer and no one, including an ex-employee, is permitted to share or disclose a trade secret without authorization from the employer.

   b) I will make a full and complete disclosure to the Company of such inventions or discoveries, including any and all information in my possession relating to the ability to patent such inventions or discoveries, whether or not such inventions or discoveries are made during normal business hours;

   c) I will execute patent applications and other instruments considered necessary or desirable by the Company or required by statute to apply for and obtain Letters Patent of the United States and foreign countries covering such inventions or discoveries, and will cooperate with and assist the Company in any proceedings necessary to obtain and/or enforce such patents; and

8) With regard to all inventions and discoveries that are the property of the Company or in which the Company owns exclusive rights, I will, when requested by the Company, cooperate with and assist

the Company and execute documents or other instruments in any proceeding deemed necessary or desirable by the Company to obtain and/or enforce patents thereon.

9) The above obligations in paragraphs 7 and 8 shall continue beyond the termination of employment with respect to inventions or discoveries conceived or made by me during the period of employment and shall be binding upon my assigns, executors, administrators, and other legal representatives. The obligations and covenants set forth in paragraphs 3, 5, and 6 shall also continue beyond the termination of my employment with the Company.

10) I acknowledge that the covenants and duties of this agreement shall apply and shall not terminate regardless of the reason for my separation from the Company, be it voluntary, with cause, or without cause. I agree that the Company may assign this agreement, including the provisions regarding restriction on competition, to a third party without notice and without my consent. I understand that this agreement and the obligations and covenants set forth herein will be governed by and interpreted in accordance with the law of the State of Florida. I represent and warrant that I am not a party to or otherwise subject to or bound by the terms of any contract, agreement or understanding which in any manner would limit or otherwise affect my ability to perform in my position with the Company. I agree that I will not disclose to the Company any confidential or proprietary information of any prior employers or any other party with whom I have been affiliated.

11) I have read and carefully reviewed this Conditions of Employment Agreement. I further affirm that I understand its terms and conditions including but not limited to my status as an employee at will and that I have been given the opportunity to review and consult with any professional advisors prior to entering into this Agreement.

Signature of New Employee _____ Date 3-29-11

Signature of Company Representative _____ Date March 29, 2011