UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PHOSPHORUS FREE WATER
SOLUTIONS, LLC,

        Plaintiff,

v.                                Case No: 6:21-cv-1959-WWB-LRH

THOMAS WAITE, an individual,
and FERRATE SOLUTIONS, INC.,
a Florida corporation

        Defendants.
_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 6.02, Plaintiff Phosphorus Free Water Solutions, LLC ("Phosphorus Free"), moves for entry of a preliminary injunction to enjoin Defendants Thomas Waite and Ferrate Solutions, Inc. from misappropriating trade secrets.

**I.    INTRODUCTION**

This Motion for Preliminary Injunction follows the Plaintiff's recently filed Verified Complaint ("Complaint") seeking damages and permanent injunctive relief against the Defendants. As explained in the Complaint, this motion, and attached declarations by Timothy McIntee and Luke Daly (Exhibits A and B, respectively)

the Defendants' continued use of Phosphorus Free's intellectual property rights distorts the market and substantially impacts Phosphorus Free's business.

## II. BACKGROUND

Phosphorus Free provides water and wastewater treatment solutions to process and remove excess nutrient pollutants such as phosphorus. Phosphorus Free is a licensee of Ferrate Treatment Technologies, LLC ("FTT").[1]

FTT developed proprietary methods, materials, and processes for ferrate manufacture, use, and treatment to process and remove phosphorus and other contaminants from bodies of water. Ferrate is a highly reactive, iron-based chemical compound that provides an environmentally friendly solution to water treatment. FTT's innovation was significant for its ability to manufacture ferrate at commercially viable scale instead of in small amounts, and involved considerable

---

[1] Phosphorus Free has standing as a licensee to bring claims enforcing intellectual property rights. *See* 18 U.S.C. 1839(4) (defining "owner" of a trade secret under the Defend Trade Secrets Act as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed"); *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1290 (S.D. Fla. 2010) (observing no ownership requirement under the Florida Uniform Trade Secrets Act and finding the plaintiff had sufficiently alleged it possessed the trade secret); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (observing that courts have "generally come to the same conclusion: a party has standing to bring a trade secrets claim if it has possession of the trade secret" and collecting cases).

Phosphorus Free has standing to bring a breach-of-contract claim because FTT assigned Waite's employment agreement to Phosphorus Free, as FTT was permitted to do under the agreement. *See Kohl v. BCBS of Florida, Inc.*, 988 So. 2d 654, 658 (Fla. 2008) ("All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment.").

effort, knowledge, experimentation, and time to develop. Since 2004, FTT has held four patents for methods of synthesizing ferrate, and currently holds two. The patents protected "high-level" information but not specific working knowledge of, for example, how to store or dose materials.

Among FTT's intellectual property was the Ferrator, a ferrate reactor originally conceived by FTT in 2009, used in its method of on-site production of commercially viable quantities of Ferrate for water treatment, and developed for municipal, surface water, and industrial applications. FTT's largest capacity Ferrator is the Fe300 model. The Fe300 rests on a trailer approximately 40 feet long and includes many pieces of equipment, including mixing tanks and pumps.

Employees worked with the Ferrator on a "need-to-know" basis. Employees customarily signed non-disclosure agreements, and FTT worked under a non-disclosure agreement with a key vendor who built the Ferrator, Gas Turbine Efficiency ("GTE"). FTT and Phosphorus Free sealed physical equipment structures with closures and protected source codes for operational software with passcodes. Neither has published their methods of synthesizing ferrate in journals or elsewhere.

In March 2011, FTT employed Waite, and they executed an employment agreement (the "Employment Agreement") (Exhibit B to the Complaint). The Employment Provision contained provisions regarding trade secrets, confidentiality, and other materials, including these:

3) I understand and acknowledge that the Company will disclose information to me in the course of my employment, including confidential business information and trade secrets of the Company. I will not, during or at any time after the period of my employment by the Company, use for myself or others or divulge or convey to others, directly or indirectly, any information, knowledge, data, or property relating to the Company's business, including but not limited to, production costs, identities of past, current and prospective customers, selling prices, ferrate production techniques and product characteristics, developed, learned, or in any way obtained by me during the course of my employment by the Company other than published material properly in the public domain, unless authorized by the Company in writing or by established Company procedures. This includes, but is not limited to, information, knowledge, data, or property concerning any process, apparatus, or product manufactured, used, developed, investigated, or considered by the Company.

4) I understand and acknowledge that all memoranda, notes records, papers, or other documents (and all copies thereof) relating to the Company's business and all property associated therewith (such as but not confined to methods, knowhow, and stoichiometry) in any way authored or obtained by me while employed by the Company shall be the Company's property, and will not be removed from the Company's premises without written authorization from the appropriate supervisor and shall be delivered by me to the Company on termination of employment or at any time on the Company's request together with my written certification of compliance. This includes but is not limited to such documents, computers, cell phones, and property containing or concerning any process, apparatus, or product manufactured, used, developed, investigated or considered by the Company. I will surrender all manuals, handbooks, employee identification cards and passes, credit cards, computers, cell phones, Company documents and other similar items of Company property to the Company promptly on my termination of employment.

…

7)a) I understand that a trade secret is any confidential information, machine, pattern, or process, which may gave its user an advantage over his or her business competitors. Trade secrets are protected indefinitely and there is no time limit on Trade secrets. They are the sole property of the employer and no one, including an ex-employee, is permitted to share or disclose a trade secret without authorization from the employer.

…

> 9) The above obligations in paragraph[] 7 … shall continue beyond the termination of employment with respect to inventions or discoveries conceived or made by me during the period of employment and shall be binding upon my assigns, executors, administrators, and other legal representatives. …

Complaint Exhibit B.[2]

Waite's employment relationship with FTT ended in September 2014.

On November 2, 2016, FTT and Phosphorus Free executed a licensing agreement (Exhibit A to the Complaint), granting an exclusive twenty-year license to FTT's technology in North America and Canada, including software, patents, know-how, formulas, and any other intellectual property related to collecting, filtering, and removing phosphorus from water.

On March 26, 2018, Waite incorporated Ferrate Solutions. Its website currently advertises it has designed "proprietary blends of inexpensive, commercially available feedstock chemicals" to continuously generate ferrate near its point of use and employs an on-site, site-specific modular treatment system. The website represents that "[f]or the past eight years Dr. Waite has worked on treating all types of water and wastewater using these unique [ferrate] solutions," which includes his employment with FTT.

---

[2] As explained in the Complaint, in 2021, FTT assigned clauses 3, 4, 6, 7, and 9 of the Employment Agreement to Phosphorus Free.

On November 3, 2018, Waite emailed Luke Daly, the former CEO and founder of FTT. Waite requested a license or similar arrangement for FTT's patents to present to investors for a possible start-up. He sought a "non-exclusive, irrevocable, world-wide" license to use FTT's patents "related to Ferrate synthesis and applications from [FTT], in any manner, including but not limited to the development, manufacture, and sale of FTT 'Ferrators.'" Daly replied that such a broad license would make Waite a direct competitor to every FTT licensee or sales partner worldwide.

Members of Phosphorus Free and FTT have since learned that, in January 2019, (1) Waite contacted both a top sales executive for FTT, John Flaugher, about working with Ferrate Solutions, and Michael Thomas, the president of the Industrial Business Unit at GTE with whom FTT had a non-disclosure agreement to build Ferrators; (2) in a meeting later that month with Thomas and Bob Knott, GTE's Senior Vice President, Waite sought to present a design and ask for a price to build his own Ferrator, while showing drawings and a bill of materials of an FTT reactor design.

In February 2019, Daly sent a letter to Waite asking him to take down the website and cease-and-desist any impermissible activity to the extent any was occurring. At the time, FTT and Phosphorus Free had no specific knowledge regarding what work the Defendants were actually performing or in what manner.

Phosphorus Free learned about infringing activity recently from an administrative proceeding. In or around March 2021, Phosphorus Free submitted a bid for a project with the South Florida Water Management District to remove phosphorus from the District's water basin. Ferrate Solutions also submitted a bid, and the District initially awarded the project to Ferrate Solutions. Phosphorus Free challenged the award to Ferrate Solutions (for reasons unrelated to this litigation) and, during subsequent administrative proceedings, learned that Defendants had purchased and refurbished a Ferrator Fe300.

Discovery from that proceeding showed that a dredging company had approached Ferrate Solutions and, in July 2020, they executed a contract for the Grand Canal Muck Removal Project in Brevard County, Florida. Defendants included with documents for the project a material safety data sheet ("MSDS") with FTT's letterhead.

In anticipation of the Grand Canal Project, on July 7, 2020, Ferrate Solutions executed a sale and purchase agreement (the "Purchase Agreement") to acquire a Ferrator Fe300 from a former licensee of FTT, WesPac Energy ("WesPac"), a California company. Ferrate Solutions did not obtain a license from FTT for that Ferrator. While WesPac owned the Ferrator Fe300 machine outright, the license to use the operational software and use it to treat water contaminates had expired. The Ferrator Fe300 was not operational, and the Defendants hired former FTT employees

to help refurbish the device. Beyond the operational software, using the machine requires specific knowledge, including timing of sequences and appropriate measurements and ratios.

Phosphorus Free invested nearly $3 million to further develop FTT's technology and seeks to protect its substantial investment and licensee rights to which it is duly entitled.

**III.   STANDARD & BURDEN**

The primary purpose of preliminary injunctive relief is to maintain the status quo. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). To support a preliminary injunction, a plaintiff must show "(1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without a preliminary injunction; (3) that the threatened injury to the party outweighs any harm that might result to the defendants; and (4) that an injunction is not adverse to the public interest." *Brown v. Sec'y, U.S. Dep't of Health and Human Servs.*, 4 F. 4th 1220, 1224 (11th Cir. 2021); *see also* Local Rule 6.01(b). Generally, the first factor—likelihood of success—is the most important. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270 n.12 (11th Cir. 2020).

The plaintiff bears the burden of persuasion. *Id*. "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* (emphasis in original). A court "may rely on affidavits and

8

hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Whertec, Inv. v. Salmon*, No. 3:20-cv-1254-BJD-PDB, 2021 WL 3555676, at *7 (M.D. Fla. Apr. 28, 2021) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11 Cir. 1995)) (alterations omitted). And a court "may consider the credibility of witnesses and is not required to resolve any disputed issues of fact in a light most favorable to the non-moving party on a motion for preliminary injunction." *Int'l Markets Live, Inc.*, No. 20-23080-CIV, 2020 WL 9219150, at *11 (S.D. Fla. Nov. 25, 2020) (citing *Imaging Business Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006)), *report and recommendation adopted*, 2021 WL 2449777.

In a case with multiple claims, a plaintiff need only satisfy its burden for injunctive relief on one claim. *Sapphire Consulting Servs. LLC v. Anderson*, No. 6:20-cv-1724-CEM-LRH, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 2, 2021) (citation and quotation marks omitted).

## IV. ARGUMENT

### A. Substantial Likelihood of Success on the Merits

Aside from a claim for injunctive relief (Count V), Phosphorus Free brings four claims: trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") (Count I) and the Florida Uniform Trade Secrets Act (FUTSA) (Count

9

II), tortious interference with business relations (Count III), and breach of contract (Count IV). Phosphorus Free is likely to succeed on each, though success on only one is necessary for preliminary injunctive relief.

### i. *Trade Secret Misappropriation (Counts I and II)*

The DTSA and the FUTSA both prohibit trade secret misappropriation. 18 U.S.C. §§ 1831–1839 (DTSA), Fla. Stat. §§ 688.001–009 (FUTSA). The DTSA adds that the product or service related to the trade secret must be used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). Both provide that a court may enjoin actual or threatened misappropriation. 18 U.S.C. § 1836(b)(3)(A)(i); Fla. Stat. § 688.003. Though the "trade secret" definition is somewhat broader under the DTSA, as applied in most cases, the "trade secret" and "misappropriation" definitions for each are "substantially equivalent," and a court may consider such claims together. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020).

The DTSA defines a "trade secret" as:

(3) all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if

(A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3); *see also* Fla. Stat. § 688.002(4) (defining a trade secret similarly under the FUTSA).

A trade secret "can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret." *Digiport, Inc. v. Foram Dev. BFC, LLC*, 314 So. 3d 550, 553 (Fla. 3d DCA 2020) (internal quotations and citations omitted). And a trade secret can exist as a process, machine, or compilation of equipment. *See Premier Lab Supply, Inc. v. Chemplex Indus., Inc.,* 10 So. 3d 202, 205–06 (4th DCA 2009) (finding that the plaintiff had established a spooling machine was unique and not readily ascertainable by proper means; while other companies have spooling machines, the design of this machine was specific, involved "intricate" calculations and unique timing, and required determining precise measurements and ratios).

Regarding secrecy, a confidentiality agreement, for example, sufficiently demonstrates "reasonable efforts" to maintain secrecy. *Advantor Systems Corp. v. DRS Tech. Servcs., Inc.*, 678 F. App'x 839, 858 (11th Cir. 2017) (considering an indefinite confidentiality provision in an employment agreement); *see also Premier*, 10 So. 3d at 206 (finding the plaintiff took reasonable measures to protect

11

information by keeping the equipment in a separate room despite no confidentiality agreement).

The DTSA defines "misappropriation" in three ways: through acquisition, disclosure, or use. 18 U.S.C. § 1839(5). Regarding the first, "misappropriation" means "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id.* § 1839(5)(A). Regarding the second and third, "misappropriation" means "disclosure or use of a trade secret of another without express or implied consent by a person who," among other ways, "used improper means to acquire knowledge of the trade secret" or at the time of disclosure or use knew or had reason to know that knowledge of the trade secret was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B)(i)–(ii). The FUTSA defines "misappropriation" similarly. *See* Fla. Stat. 688.002(2).

"The bar for what counts as 'use' of a trade secret is generally low." *Compulife*, 959 F.3d at 1313. Total misappropriation of a trade secret is unnecessary; appropriating a "substantial portion" is sufficient. *Id.* at 1314 (citation omitted).

Under both statutes, the plaintiff must show it lawfully possessed information with independent economic value, took reasonable measures to keep the information secret, and the defendant used or disclosed (or acquired) that information despite a duty or other reason to maintain its secrecy. *See Convergent Nonprofit Solutions,*

*LLC v. Wick*, No. 2019 WL 7423549, (M.D. Fla. Sept. 5, 2019); *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 307 So. 3d 927, 929 (Fla. 3d DCA 2020).

As detailed in the Complaint, Phosphorus Free's trade secrets concern know-how regarding production, use, storage, and delivery of ferrate and ferrate feedstocks and related processes, including use of a Ferrator, a large and complicated piece of equipment requiring specific operational know-how and software. These innovations were significant and important to FTT and later Phosphorus Free because, for the first time, it allowed ferrate to be manufactured at commercially viable scale. Waite clearly showed an interest in using such materials, including a Ferrator, by seeking a patent license from FTT without success. Without a license or other permission, Waite was and is obligated by contract to maintain confidentiality and not use trade-secret information. Despite this, Defendants began a business and are acting as direct competitors to Phosphorus Free. Waite not only used trade-secret knowledge gained from his employment with FTT to build Ferrate Solutions and refurbish a Ferrator, but also sought help from other FTT employees to assist in this effort.

Phosphorus Free's trade secrets derive value from not being generally known, including through reasonable efforts to maintain secrecy by not publishing its methods, using source codes to protect operational software, limiting employee access, and having employees customarily sign non-disclosure or confidentiality

agreements. The technology here was developed through considerable time, effort, and money, including millions of dollars from Phosphorus Free, and Phosphorus Free seeks to protect its investment and intellectual property from the Defendants' misappropriation and profit therefrom.

### ii.     *Tortious Interference with a Business Relationship*

A plaintiff must prove four elements to succeed on a claim for tortious interference with a business relationship: (1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference. *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015).

The Defendants have intentionally interfered with Phosphorus Free's business relationships or contracts with employees, vendors, customers, or others by soliciting them, including to help the Defendants build or refurbish a Ferrator, and by placing bids on water treatment projects in competition with Phosphorus Free, leading at least to a loss of business and goodwill.

### iii.    *Breach of Contract*

A plaintiff must prove three elements to succeed on a claim for breach of contract: (1) a contract existed, (2) the contract was breached, and (3) damages

flowed from that breach. *A.R. Holland, Inc. v. Wendco Corp.*, 884 So. 2d 1006, 1007 (Fla. 1st DCA 2004).

Waite entered into an Employment Agreement with FTT, the pertinent rights to which are now assigned to Phosphorus Free. Waite breached that contract by presenting confidential information to GTE and others and advertising confidential information as belonging to him or Ferrate Solutions, retaining and presenting FTT documents without permission, acquiring a Ferrator Fe300 and hiring former FTT employees to refurbish the Ferrator Fe300, and using the refurbished Ferrator Fe300 as part of the Grand Canal Project. Phosphorus Free has been damaged by the loss of potential customers.

### B. Irreparable Harm

An injury is generally irreparable if monetary remedies cannot undo the harm. *Cate*, 707 F.2d at 1189. But "[e]ven when a later money judgment might undo an alleged injury, the alleged injury is irreparable if damages would be 'difficult or impossible to calculate.'" *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (citation omitted). And although "economic losses alone do not justify a preliminary injunction, the loss of customers and goodwill is an irreparable injury." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, LLC, 425 F.3d 964, 970 (11 Cir. 2005) (internal quotation marks and citation omitted). The irreparable injury

15

must be actual and imminent, not remote nor speculative. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000).

Courts have often found irreparable injury in cases involving the use of trade secrets. *See, e.g., Seacoast Banking Corp. v. Diemer*, No. 6:20-cv-57-Orl-37LRH, 2020 WL 1674309, at *4 (M.D. Fla. Jan. 17, 2020); *I.C. Systems, Inc. v. Oliff*, 824 So. 2d 286, 287 (Fla. 4th DCA 2002) (finding injunctive relief appropriate when, aside from the availability of damages through tortious interference and misappropriation of trade secret claims, an injunction was necessary to "diminish the effect of the ongoing violations" of trade-secret use and "diminish the damages which are incapable of reasonable ascertainment and which are, by definition, irreparable"); *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) (finding irreparable harm where the defendant used trade secrets to acquire the plaintiff's business accounts and "jump start" the defendant's business). And at least one court has held that "irreparable injury may be presumed in cases involving wrongful interference with a business relationship." *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983).

The harm to Phosphorus Free is irreparable, actual, and imminent. By using Phosphorus Free's trade secrets to build their own business, the Defendants have distorted the market and taken away business opportunities where Phosphorus Free might otherwise be the only project bidder or company able to perform the work. By

distorting the market in such a way, the damages are difficult or impossible to calculate. Both the DTSA and FUTSA specifically provide for injunctions as an appropriate form of relief regarding trade-secret misappropriation.

### C. Threatened Harm Outweighs Injury to Defendants

The threatened harm to Phosphorus Free outweighs the injury to the Defendants. While the threatened harm to the Defendants' business could be significant, the Defendant is not entitled to any work built on Phosphorus Free's trade secrets. Any projects for the Defendants will come at the expense of a loss to Phosphorus Free. *See, e.g.*, *BellSouth*, 425 F.3d at 970 (affirming a finding that threatened injuries did not outweigh the harm to the plaintiff where the defendant would "undoubtedly" lose customers but would only suffer that harm as a result of its impermissible conduct).

### D. Public Interest

The "existence of Florida's trade secret statute illustrates [Florida's] interest in protecting businesses from theft of confidential information." *Hatfield v. Autonation, Inc.*, 939 So. 2d 155, 158 (Fla. 4th DCA 2006). And Congress recently enacted the DTSA in recognition of the "growing importance of trade secrets," that their misuse is "particularly economically damaging," and that any previous state relief may have differed in the protection afforded to trade-secret owners. *See Federal Committee Report*, 2015 FD S.B. 1980 (Mar. 7, 2016).

The public interest factor weighs in favor of granting a preliminary injunction. The public gains little to no benefit by allowing the Defendants' violations to continue. Any economic activity generated by the violations is not true economic growth but is rather gain to the Defendants at a loss to Phosphorus Free. The public benefits when protections for trade secrets are enforced because it creates a secure economic environment where real economic growth can occur.

**E.     Bond**

Under Rule 65, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Despite the language of the rule, "it is well-established that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all." *Bellsouth*, 425 F.3d at 971 (alterations omitted); *AFC Enterprises, Inc. v. THG Restaurant Grp., LLC*, 416 F. App'x 898, 898 (11th Cir. 2011) (rejecting the argument that the district court erred in setting no bond because a bond is mandatory; "Such is simply not the case. Under our existing precedent, it is within the discretion of the court to set the amount of the bond or to require no security at all.") (internal alterations omitted). This Court has declined to enforce a bond where the defendants' conduct was "clearly wrongful"

and the plaintiff had established a "strong case." *See HornBlasters, LLC v. Gmirr*, No. 8:19-cv-1164-T-TGW, 2020 WL 3250246, at *4 (M.D. Fla. Apr. 1, 2020).

Phosphorus Free has established a strong case and the Defendants' conduct is wrongful. Accordingly, Phosphorus Free requests this Court issue a preliminary injunction without requiring a bond. Alternatively, Phosphorus Free requests the Court issue a minimal bond.

## V.   CONCLUSION

Based on the forgoing, Plaintiff respectfully requests that this Court grant the request for injunctive relief and enter the proposed order, attached as Exhibit C, submitted pursuant to Local Rules 6.01(a)(5) and 6.02(a)(1), and order any further relief the Court deems just.

Dated this 29th day of November 2021.

BISHOP & MILLS

By: */s/  Thomas E. Bishop*
      Thomas E. Bishop

Florida Bar Number 956236
Katharine Noelle Roth
Florida Bar Number 106692
Alexander Thomas Briggs
Florida Bar Number 117490
One Independent Drive, Suite 1700
Jacksonville, FL 32202
(904) 598-0034 / (904) 598-0395 (fax)
*tbishop@bishopmills.com*

*kroth@bishopmills.com*
*abriggs@bishopmills.com*
*shofner@bishopmills.com*
*service@bishopmills.com*

*Attorneys for Plaintiff, Phosphorus Free Water Solutions, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of November, 2021, a true and correct copy of the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. A separate copy will be emailed to counsel for the Defendants in the administrative proceedings referenced herein.

*/s/ Thomas E. Bishop*
Attorney