UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PHOSPHORUS FREE WATER
SOLUTIONS, LLC,

        Plaintiff,

v.                                    Case No: 6:21-cv-1959-WWB-LRH

THOMAS WAITE, an individual,
and FERRATE SOLUTIONS, INC.,
a Florida corporation

        Defendants.
_____/

## PLAINTIFF'S RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR A MORE DEFINITE STATEMENT

Phosphorus Free Water Solutions, LLC ("the Plaintiff"), hereby responds to Thomas Waite and Ferrate Solutions, Inc.'s ("the Defendants") "Motion to Dismiss or Alternatively for a More Definite Statement and Incorporated Memorandum of Law in support" ("Motion"), Doc. 12. The Plaintiff, as the licensor of trade secrets and other intellectual property from and assignee of Waite's Employment Agreement with Ferrate Treatment Technologies, LLC ("FTT"), sued the Defendants for trade-secret violations under the Defend Trade Secrets Act ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"), breach of contract, tortious interference, and injunctive relief. *See* Doc. 1. The Defendants move to dismiss the Complaint, or alternatively for a more definite statement regarding trade secrets.

**I.      PRELIMINARY STATEMENT**

All counts are sufficiently pled to state a claim. The two trade-secret claims are timely under the plain meaning of the statutes and interpretive caselaw. The Plaintiff, through a valid assignment of Waite's Employment Agreement, has standing to bring a breach of contract claim. Both the trade-secret and tortious interference counts are sufficiently detailed under applicable pleading standards to state a claim. And the count seeking injunctive relief is appropriate. Because the trade-secret claims are sufficiently stated, no more definite statement is needed in the alternative. The motion is due to be denied.

**II.     ARGUMENT & AUTHORITIES**

In deciding a motion to dismiss, a court must accept the factual allegations as true and must draw all reasonable inferences in a plaintiff's favor. *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

**A.     The Trade-Secret Claims are Timely Under the Statute of Limitations**

The Defendants contend the trade-secret claims (Counts I and II) are untimely. Doc. 12 at 8–10.[1]

The Complaint alleges:

> 29.    On November 3, 2018, Waite emailed Luke Daly ("Daly"), the former CEO and founder of FTT. Waite requested a license for FTT's patents, or alternatively, "a letter of intent to 'simply' not litigate any patent violations that I or mine might generate during our start-up. This would by-pass any licensing issues you might have with creditors??" Waite hoped to provide the license or letter to possible investors in projects by Ferrate Solutions.
>
> 30.    Waite attached to the email a proposed patent licensing agreement [quoted in the complaint but omitted here]. Daly replied that such a broad

---

[1] Citations to the Defendants' Motion are to the numbers at the top "stamped" by CM/ECF.

2

>license would make Waite a direct competitor to every FTT licensee or sales channel partner worldwide.

Doc. 1.

The Complaint further details that the Plaintiff later learned that, in January 2019, Waite sought to have a Ferrator (one of FTT's machines) built and presented some of FTT's materials in meetings regarding building. Doc. 1 ¶¶ 31–33. In February 2019, Daly sent a cease-and-desist letter regarding any impermissible activity. Doc. 1 ¶ 34. Phosphorus learned of the full nature and extent of wrongful actions through administrative proceedings involving the Defendants and the South Florida Water Management District in 2021. Doc. 1 ¶ 39.

Both the DTSA and the FUTSA have a three-year statute of limitations. *See* 18 U.S.C. § 1836(d) and Fla. Stat. § 688.007. Both provide that the time begins to run when misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." *Id.*

Courts have consistently found that the statute does not begin to run until there is some notice of wrongful activity that a claimant knew of. *See*, *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 565 (8th Cir. 2019) (affirming finding at summary judgment that statute of limitations had run when offending party, despite warning, had continued wrongful conduct, took no action to conceal its activities, continued to sell parts to claimant's customers, advertised its use in common industry trade journals, and promoted its activities at trade show which representatives from claimant attended); *Knights Armament Co. v. Optical Systems Tech., Inc.*, 654 F.3d 1179, 1184 (11th Cir. 2011) (plaintiff knew from a letter from the government three years before a trade show that the defendant had attempted to misappropriate its drawings, in addition to other suspicions

3

at that time); *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 126–27 (D.C.C. 2020) (dismissing complaint where the plaintiff pled that his then-wife had stolen trade secrets years earlier and found he knew or should have known that they had been stolen after a series of phone calls from relatives and a search of the house for missing copies of his intellectual property, in addition to seeing his trade secrets exhibited in public). Each of these cases turns on the claimant's knowledge that wrongful conduct was taking place through either direct knowledge or other information readily available to the available claimant. No such notice or knowledge is present in the case at bar.

To meet this high bar for notice of wrongful conduct, the Defendants contend that the allegations of an email from Waite requesting a license to use the product gave notice of wrongful misappropriation. But Waite's November 2018 email would have provided no reason to suspect violations. This is particularly so when taking any inferences in the Plaintiff's favor at the motion to dismiss stage. *See Bailey*, 843 F.3d at 480. The most logical inference is actually contrary to notice of wrongful conduct. By formally requesting licensure and permission, and following lawful and accepted commercial and intellectual property practices in making that request, Defendants suggested they would not breach the lawful protections and misappropriate. It supports the reasonable inference that Waite would continue discussions to get a license, or, failing that, not use FTT's property. Operating the business with the Plaintiff's trade secrets is unlawful. But merely requesting permission to use that property does not trigger notice of any such wrongful conduct.

Although information about the misconduct fully came to light in the 2021 administrative proceeding, the earliest conceivable date the statute of limitations could have begun to run would be January or February 2019 when Waite's actions raised

4

concern that Waite was potentially using the Plaintiff's intellectual property.[2] This prompted Daly to send a cease and desist letter to Waite. But even if this was sufficient notice, it would make the earliest date for the statute running out January or February 2022.

This analysis is consistent with cases that have addressed notice that is insufficient to trigger the running of the statute. In *Uni-Systems, LLC v. United States Tennis Assoc., Inc.*, the plaintiff had patents and trade secrets related to retractable roof designs for stadiums. 350 F. Supp. 3d 143, 155 (E.D.N.Y. Oct. 5, 2018). In 2012, the contractor for a new roof, after having received a proposal from the plaintiff, had a competitor of the plaintiff use the plaintiff's patents and trade secrets to build the roof instead, which was completed in 2016. *Id.* at 155–56. The plaintiff pleaded that it discovered the trade secret misappropriation in 2015, when it received drawings for the new roof that incorporated the plaintiff's trade secret information. *Id.* at 178–79. The defendants argued the plaintiff should have known the trade secrets would become known in 2009 when the contractor began maintaining an older roof the plaintiff had built. *Id.* The court rejected the defendant's argument, finding the plaintiff had "alleged sufficient plausible facts that Hardest & Hanover, a contractor tasked with maintaining plaintiff's retractable roof, and charged with keeping plaintiff's trade secrets confidential had disregarded its contractual obligations limiting use of those trade secrets and retained the information for future improper use until said improper use occurred." *Id.* Similarly here, the Plaintiff would have

---

[2] For clarification, the allegations regarding statements on Ferrate Solutions's website, Doc. 1 ¶¶ 27–28, reflect what the website stated at the time of filing the Complaint.

had no reason to believe the Defendants were misappropriating trade secrets until actually learning that improper use occurred.

The Defendants also contend that, "Based on Defendant Waite's email request for a license and Daly's acknowledgment that Waite's action would be actionable, Plaintiff discovered or should have discovered … the alleged trade secret misappropriation as early as November 3, 2018." Doc. 12 at 9. But this is not what the Complaint states. The Complaint alleges not that Daly's mere request would be actionable for trade-secret violations by FTT—which he presumably would not be violating if he were granted a license to certain intellectual property—but that granting the request would have made Waite a competitor to FTT's already-existing licensees. What the Complaint pleads is a lawful request, not a misappropriation or any suggestion of a misappropriation.

For these reasons the statute could not have begun to run until at the very earliest January or February 2019, making any trade-secret claim brought by the Plaintiff timely if filed by January 2022. This action was filed on November 19, 2021, and is thus timely.

**B.     The Plaintiff has Standing to Bring the Breach-of-Contract Claim**

The Defendants contend the Plaintiff lacks standing to bring a breach-of-contract claim (Count IV) for Waite's Employment Agreement because of Fla. Stat. § 542.335(1)(f)(2). Doc. 12 at 10–11.

The Complaint alleges that FTT assigned clauses 3, 4, 6, 7, and 9 of Waite's Employment Agreement to Phosphorus Free. Doc. 1 ¶ 25; Doc. 1-3 (Agreement). The Employment Agreement states:

> I agree that the Company may assign this agreement, including the provisions regarding restriction on competition, to a third party without notice and without my consent.

Doc. 1-3 ¶ 10.

6

Generally, all contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates otherwise. *Kohl v. BCBS of Florida, Inc.*, 988 So. 2d 654, 658 (Fla. 2008). Florida Statute § 542.335(1)(f)(2) governs the assignability of restrictive covenants. It provides:

> (f): The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided:
>
>> (2): In the case of an assignee or successor, the restrictive covenant expressly authorized enforcement by a party's assignee or successor.

Fla. Stat. § 542.335(1)(f)(2).

Cases have interpreted this requirement expansively. "The statutory requirement of an 'expressly authorized enforcement' of the restrictive covenant to the assignee is satisfied by a general assignment clause in the contract creating the restrictive covenant." *DePuy Orthopaedics, Inc. v. Waxman*, 95 So. 3d 928, 937–38 (Fla. 1st DCA 2012) (citing in part Fla. Stat. § 542.335(1)(h), which provides that restrictive covenants should be construed in favor of protecting legitimate business interests and not construed narrowly, and "well established" law that an unqualified assignment is sufficient to transfer all interests and rights); *see also Patel v. Boers*, 68 So. 3d 380, 381 (5th DCA 2011) (finding this "general assignment clause" satisfied the statutory requirement: "the mutual and reciprocal covenants and agreements, rights and obligations contained in this Provider Agreement are assignable only by [Boers]").

7

To the extent the assigned contract provisions fall under this statute[3], the assignment language here satisfies the requirement for "expressly authorized enforcement." *See Depuy*, 95 So. 3d at 937–38; *Patel*, 68 So. 3d at 381. Thus, by the plain requirements of the statute, the contract language, and interpretive caselaw, the rights asserted by the Plaintiff are assignable.

The cases relied upon by the Defendants do not change this result. Doc. 12 at 11. *Marx v. Clear Channel Broadcasting, Inc.*, 887 So. 2d 405, 406 (4th DCA 2004) dealt with a contract clause that prohibited assignment. ("No party, however, may assign its rights or obligations under this Agreement."). In *United Subcontractors, Inc.*—quoted by the Defendants for the language of the statute—the court found language that an employment agreement "shall be binding on the heirs" sufficiently satisfied the statute, even though it had no assignment or enforceability language, because "binding" indicated an intent for benefits and burdens to be transferable to successors. *See United Subcontractors, Inc. v. Godwin*, No. 11-81329-CV, 2012 WL 8652471, at *3 (S.D. Fla. Mar. 9, 2012). These cases support the viability of the assignment at bar because the Employment Agreement specifically authorizes assignment.[4] For these reasons the Plaintiff has standing to bring the breach-of-contract claim and this ground for dismissal is due to be denied.

---

[3] Whether the assigned provisions are even "restrictive covenants" under this statute need not be decided now given the cited law.

[4] A separate provision in the Employment Agreement states that the obligations regarding trade-secret information "shall be binding upon my assigns, executors, administrators, and other legal representatives." Doc. 1-3 ¶ 9.

8

**C.     The Trade Secret Counts Sufficiently State a Claim**

The Defendants contend the trade-secret claims fail to state a claim. Doc. 12 at 12–19. But this argument ignores the detailed allegations and controlling law for stating such a claim.

*i.     Trade Secrets Sufficiently Identified*

The DTSA defines a "trade secret" as:

(3) all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3); *see also* Fla. Stat. § 688.002(4) (defining a trade secret similarly under the FUTSA).[5]

At the dismissal stage, a plaintiff "need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *Dyncorp Int'l v. AAR Airlift Group, Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016); *see Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018) (same and evaluating together FUTSA and DTSA claims). Whether

---

[5] Though the "trade secret" definition is somewhat broader under the DTSA, the definitions are "substantially equivalent," and a court may consider such claims together. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020).

9

"something is a trade secret is a question typically resolved by a fact finder after full presentation of evidence from each side." *Yellowfin Yachts, Inc. v. Barker Boatworks*, LLC, 898 F.3d 1279, 1298–99 (11th Cir. 2018).

The Plaintiff has sufficiently pled the trade secrets to "give the defendant notice" of the trade secrets at issue. *See Dyncorp*, 664 F. App'x at 848. The Defendants' authority to the contrary references a higher standard of disclosure not applicable for these claims at this stage of pleading. *See* Doc. 12 at 14 (citing *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. Mar. 2008) and *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324–25 (S.D. Fla. 2001)). Those cases dealt with motions to compel discovery or the interpretation of state trade-secret privilege interpretation during discovery. As explained in *Dyncorp*, "Florida courts adjudicating FUTSA cases have said that the plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery." 664 F. App'x at 848 (quotation marks omitted). The court went on to explain that, "[h]owever, to satisfy this requirement at the dismissal stage in federal court," the plaintiff need only satisfy the plausibility-and-notice standard described above. *See id*.

In *Dyncorp*, the court found this language satisfied the pleading standard, coupled with allegations of the defendant taking a binder of documents and sharing it with others:

> the trade secrets obtained by AAR included confidential and proprietary Dyncorp financial and technical data relating to the Contract, such as lists of the personnel employed to provide services, the salaries and pay differentials for those personnel on the Contract, other pricing and financial data about Dyncorp's performance on the Contract, and technical data about Dyncorp's staffing approach and business operations pertaining to the Contract.

*Id*. at 849 (alterations omitted); *see also Dev. Tech. LLC v. Mitsui Chems. Inc.*, No. 8:18-cv-1582, 2019 WL 1598808, at *3 (M.D. Fla. Apr. 15, 2019) (finding, in a trade-secret

10

case regarding an irrigation system, that the plaintiff had sufficiently pled trade secrets: "The Amended Complaint identifies several categories of confidential and proprietary information disclosed to MCA, including 'photographs of active tests and system configurations' and visual demonstrations of 'root biopsies' and the 'correlation and relationship of the plant's root structure to the Eco-Ag tubing.'"). The court distinguished the satisfactory quoted language from a complaint identifying only "broad categories of information," such as "financial or technical data." *Dyncorp*, 664 F. App'x at 849. Similarly, alleging only general business "proprietary practices" or "operating procedures" with no detail has been found to be too conclusory. *See ProV Int'l Inc. v. Lucca*, No. 8:19-cv-978, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019).

The Complaint at bar goes well beyond merely listing broad categories of information. The Complaint details the precise information at issue and its uses. The Complaint does not employ general phrases like "know-how" in isolation, but rather ties those phrases to something specific, like "production, use, and delivery of ferrate and ferrate feedstocks." *See, e.g.*, Doc. 1 ¶ 45. These are not general categories of information, but particular types of intellectual property and knowledge in this industry and this product. Stoichiometry is an apt example. It is not defined alone but is considered in relation to ferrate and ferrate feedstock and certain dosages and temperatures, for example, as the Plaintiff manufactures ferrate at commercially viable scale. Related control programs and operational knowledge of the Plaintiff's machine, the Ferrator, are also expressly alleged. This is ample detail that meets the governing pleading standard and gives the Defendants notice. For these reasons the trade secret allegations are sufficiently pled.

### ii. *Trade Secrets Pled not Generally Known and Readily Accessible*

The arguments that the trade secrets are generally known or readily accessible are conclusory and based on a statement that the trade secrets must be disclosed in a patent (while reiterating the argument that "stoichiometry" alone is not a trade secret).

The Plaintiff disputes breadth of knowledge from a patent, but notes patent details are not alleged in the Complaint and are not relevant to a motion to dismiss. *See Dev. Tech. LLC*, 2019 WL 1598808 at *3 ("Defendant argues that the misappropriation claims should be dismissed because Plaintiff's claimed trade secrets are not actually secret as Plaintiff holds a patent that publicly describes in detail its irrigation technology. This argument does not alter the conclusion that a claim for misappropriation has been properly pled. Whether the trade secrets alleged to have been misappropriated are actually secret is a matter for the finder of fact.").

More fundamentally as argued *supra*, the Plaintiff does not claim stoichiometry, i.e. chemistry, as a trade secret alone in its most broad sense not applicable to the science relevant here. The Complaint alleges that neither FTT nor Phosphorus Free has published their methods of synthesizing ferrate in journals, they sealed physical equipment structures closures and protected source codes for operational software, and customarily had employees sign non-disclosure agreements. Doc. 1 ¶¶ 17–19. The Complaint also alleges employees worked with the Ferrator on a "need-to-know" basis, and that the Ferrator Waite purchased was not operational. Doc. 1 ¶¶ 16, 38.

These allegations read in their entirety sufficiently plead that the trade secrets are not generally known and not readily accessible.

### iii.     *Method of Misappropriation Sufficiently Pled*

The arguments regarding any duty owed by Waite fail for the same reasons the arguments regarding standing to enforce the Employment Agreement fail—the assignment is valid, and Waite's contractual duty remains.

Furthermore, the right to enforce intellectual property flows with the owner or assignee. *See* 18 U.S.C. § 1839(4) (defining "owner" of a trade secret under the Defend Trade Secrets Act as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed"); *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1290 (S.D. Fla. 2010) (observing no ownership requirement under the Florida Uniform Trade Secrets Act and finding the plaintiff had sufficiently alleged it possessed the trade secret); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (observing that courts have "generally come to the same conclusion: a party has standing to bring a trade secrets claim if it has possession of the trade secret" and collecting cases).

The argument also ignores other means of misappropriation not involving a contractual duty. The DTSA defines "misappropriation" in three ways: through acquisition, disclosure, or use. 18 U.S.C. § 1839(5). Regarding the first, "misappropriation" means "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id.* § 1839(5)(A). Regarding the second and third, "misappropriation" means "disclosure or use of a trade secret of another without express or implied consent by a person who," among other ways, "used improper means to acquire knowledge of the trade secret" or at the time of disclosure or use knew or had reason to know that knowledge of the trade secret was "acquired under

13

circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B)(i)–(ii). The FUTSA defines "misappropriation" similarly. *See* Fla. Stat. 688.002(2). Other ways can therefore include acquisition—i.e., the possibility of gaining information by hiring former employees. *See, e.g.*, Doc. 1 ¶ 51 (discussing misappropriation); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1312–13 (11th Cir. 2020) (finding the district court erred "in considering only varieties of misappropriation by use that require a violation of some legal 'duty' external to the statute"). The Plaintiff has sufficiently pled misappropriation.

**D.     The Tortious Interference Count States a Claim**

The Defendants also contend that the tortious interference claim fails to state a claim. Doc. 12 at 20–23. Again, these arguments seem to rely on a heightened standard of disclosure, and ignore the well-pled allegation of improper use of trade secrets and reference to other relationships outside the bidding process.

Regarding a tortious interference claim, the plaintiff must show four elements: (1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference. *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015). Not all Florida cases have mandated that the plaintiff prove (much less plead) that a plaintiff show some sort of agreement would have been completed absent a defendant's interference. *See Int'l Sales & Service, Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1156–57 (11th Cir. 2001) (analyzing Florida law).

14

Naming a specific customer or relevant person with whom the plaintiff has a relationship is unnecessary at the pleading stage. *ADT LLC v. Vivant Smart Home, Inc.*, No. 20-23391, 2021 WL 4478932, at *6 (S.D. Fla. Sept. 30, 2021). "When there is room for different views about the propriety of a defendant's interference with a plaintiff's business relationships, the determination of whether the interference was improper or not is ordinarily left to the jury." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (analyzing Florida law). Allegations of lost sales, good will, or injury to reputation satisfy pleading standards for damages. *ADT LLC*, 2021 WL 4478932 at *3.

Allegations in the Complaint involve unique facts and a unique industry. The Defendants' focus on the bidding process (although the Plaintiff has identified at least one job in which it was otherwise the only bidder) overlooks other allegations specifically pled, including (1) meetings with FTT's vendor who built the Ferrator under a non-disclosure agreement about building Waite's own Ferrator and Waite stating that FTT would fail, and (2) that FTT and Phosphorus customarily have employees enter non-disclosure agreements, and that Waite hired former employees to help refurbish the purchased Ferrator. *See, e.g.*, ¶¶ 32–33, 38. The Defendants' contention also overlooks the allegations that the actions unjustifiably involved the use of Plaintiff's trade secrets and holding out certain of the Plaintiff's property or rights as their own. Damages such as lost money, harm to relationships, and devaluation of intellectual property, *see, e.g.*, Doc. 1 ¶ 74, are types of damages that, as alleged, sufficiently satisfy pleading standards. *See ADT LLC,* 2021 WL 4478932 at *3*.* The allegations state a claim for tortious interference.

### E.    The Claim for Injunctive Relief is Appropriate

The Defendants contend the Court should dismiss the claim for injunctive relief (Count V) as a separate count. Doc. 12 at 24. While a court may order an injunction as a remedy, courts have allowed injunctive claims to proceed if the plaintiff is seeking to enforce a statutory right. *See Jewelry Repair Enterprises, Inc. v. Son Le Enterprises, Inc.*, No. 15-cv-81622, 2016 WL 8739605, at *2 (S.D. Fla. Mar. 31, 2016) (allowing injunction claim to proceed and observing that "Florida district courts routinely permit the pleading of preliminary injunctions as individual counts in a complaint, particularly where a complaint alleges statutory claims or a breach of a restrictive covenant[.]"); *but see GlobalOptions Servs., Inc. v. North American Training Group, Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015).

"Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005); *see, e.g.*, *Seminole Masonry, LLC v. Hodges*, No. 18-60368, 2019 WL 687918, at *7 (S.D. Fla. Feb. 19, 2019) (dismissing a claim for injunctive relief because the plaintiff had alleged no "independent legal right" beyond "egregious acts" in the complaint).

Count V for injunctive relief should stand because it is based on the independent legal rights stated in the claim, and based on the other claims on which the Plaintiff is proceeding.

### F.    A More Definite Statement is not Necessary

The Defendants contend that, in the alternative, the Plaintiff should provide a more definite statement regarding definition of the trade secret. Doc. 12 at 24. As explained

16

above, the allegations are sufficiently pled and defined, and no more definite statement is necessary.

### III.    CONCLUSION

Wherefore, the Plaintiff respectfully requests the Court deny the Defendants' Motion to Dismiss or Alternatively for a More Definite Statement, Doc. 12, because the Complaint sufficiently states a claim for each count.

Dated this 30th day of December 2021.

            BISHOP & MILLS

            By: */s/ Thomas E. Bishop*
              Thomas E. Bishop

            Florida Bar Number 956236
            Katharine Noelle Roth
            Florida Bar Number 106692
            Alexander Thomas Briggs
            Florida Bar Number 117490
            One Independent Drive, Suite 1700
            Jacksonville, FL 32202
            (904) 598-0034 / (904) 598-0395 (fax)
            *tbishop@bishopmills.com*
            *kroth@bishopmills.com*
            *abriggs@bishopmills.com*

            *Attorneys for Plaintiff, Phosphorus Free Water Solutions, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December, 2021, a true and correct copy of the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

            */s/ Thomas E. Bishop*
            Attorney